## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL A. RILES, II,<br>        *Plaintiff*,<br><br>v.<br><br>SCOTT SEMPLE, ROLLIN COOK, DAVE<br>MAIGA, WILLIAM FANEUFF, GREGORIO<br>ROBLES, WILLIAM MULLIGAN, DERRICK<br>MOLDEN, AND ANGEL QUIROS,<br>        *Defendants.* | No. 3:17-cv-2178 (MPS) |

## RULING ON TIMING ISSUE WITH RESPECT TO EXHAUSTION

### I.    Introduction

Following a hearing on exhaustion, the Court ordered the parties to submit supplemental briefing addressing (1) whether Plaintiff Daniel Riles timely exhausted his administrative remedies given his testimony that he became aware of his indefinite placement on "special needs management" status on or before July 11, 2017, and (2) whether Mr. Riles can seek damages for the period preceding 30 days before he submitted his Level 1 grievance on August 30, 2017. *See* ECF No. 100. Having now reviewed that briefing, the Court concludes that Mr. Riles timely exhausted his claims as to his placement on "special needs management" status and his conditions of confinement from August 1, 2017 onward. Because the Court concludes that Mr. Riles did not properly exhaust his claims as to the period preceding August 1, Mr. Riles cannot seek damages arising from events occurring before that date.

### II.    Background

The Court assumes familiarity with the facts and procedural history of this case and sets forth only so much background as is necessary to explain its ruling.

The plaintiff alleges that his prolonged solitary confinement at Northern Correctional Institution ("NCI") constituted cruel and unusual punishment in violation of the Eighth Amendment, and that his confinement and classification as "special needs management" status without meaningful review of the necessity of the confinement or the classification violated his due process rights in violation of the Fourteenth Amendment. *See* ECF No. 21 at 21-24.[1] The defendants argue that Mr. Riles failed to exhaust both claims.

This Court held a hearing on the exhaustion issue on October 13, 2021. At that hearing, the Court ruled that the defendants failed to sustain their burden of proving that Mr. Riles failed to take the steps necessary provide his Inmate Request Form, Level 1 grievance, Level 2 appeal, and Level 3 appeal to appropriate personnel at NCI in order to exhaust his administrative remedies. ECF No. 100; ECF No. 102 at 207-208. At the end of the hearing, the Court stated that there remained a question as to whether Mr. Riles timely exhausted his administrative remedies and whether he could seek damages for the period preceding 30 days before he filed his Level 1 grievance form. ECF No. 100. The Court directed the parties to brief these issues, and they have now done so. *See* ECF Nos. 103, 107, and 108.

### III.    Relevant Law

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies before seeking relief in federal court. *Porter v. Nussle*, 534 U.S. 516 (2002). "The PLRA requires 'proper exhaustion,' which means 'using all steps that the prison grievance system holds out, and doing so *properly* (so that the prison grievance system addresses the issues on the merits).'" *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (summary order) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)) (alterations omitted). "An 'untimely or

---

[1] This Ruling cites ECF page numbers throughout.

otherwise procedurally defective administrative grievance' … does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84).

The grievance system established by the Connecticut Department of Correction ("DOC") is set forth in Administrative Directive ("A.D.') 9.6.[2]  The grievance procedure requires an inmate to first seek informal resolution of his issues, in writing, prior to filing a formal grievance.  A.D. 9.6(6)(a)(i).  If the inmate does not receive a response or is not satisfied with the response he receives, he must then file a Level 1 grievance and attach to it documentation showing his attempts to resolve the issue informally.  A.D. 9.6(6)(a)(ii).  A.D. 9.6 requires that the Level 1 grievance be submitted within 30 calendar days of the occurrence or discovery of the cause of the grievance.[3]

## IV.   Discussion

According to the plaintiff's complaint, he was placed on "special needs management" status in October 2014.  ECF No. 21 at 15.  From that time until May 2015, he was incarcerated at NCI in what he alleges were solitary confinement conditions.  *Id.* at 15-16; ECF No. 103 at 12. In May 2015, he was transferred to Hartford Correctional Center ("HCC"), where he remained until July 2015, when he was transferred back to NCI (and, he alleges, back into solitary confinement).  ECF No. 21 at 16; ECF No. 103 at 12.  He remained there until April 2017, when he was transferred back to HCC.  *Id.*  He remained at HCC until August 1, 2017, when he was transferred back to NCI, where he remained through the filing of this lawsuit in December 2017. ECF No. 21 at 17; ECF No. 103 at 12.  Mr. Riles alleges that he remained on "special needs

---

[2] *See* State of Connecticut Department of Correction Administrative Directive 9.6 ("Inmate Administrative Remedies"), dated Aug. 15, 2013 and available at https://portal.ct.gov/DOC/AD/AD-Chapter-9.
[3] A.D. 9.6(6) also sets forth procedures for appealing the denial of—or lack of response to—a Level 1 grievance, but neither those procedures nor the plaintiff's compliance with them are relevant to this ruling.

management" status throughout this period of transfers between NCI and HCC.  ECF No. 21 at

15-17.  Following his transfer back to NCI on August 1, 2017, Mr. Riles submitted an Inmate

Request Form on August 8 and a Level 1 appeal on August 30; both submissions challenged his

placement on "special needs" status and in "permanent solitary confinement."  ECF No. 103 at 3

n.4; ECF No. 1-1 at 47-55.

### a.  Mr. Riles's Due Process Claim is Not Barred

The defendants argue that Mr. Riles is barred from bringing his due process claim

because he filed his Level 1 grievance more than 30 days after he discovered the cause of the

grievance.  Specifically, they contend that Mr. Riles, according to his own testimony, discovered

"that his placement on special needs was indefinite and that it was a violation of his due process

rights" at a meeting with officials at HCC on July 11, 2017.  ECF No. 103 at 4.  Because Mr.

Riles did not file his Level 1 grievance until more than 30 days after that meeting, the defendants

argue that the grievance was untimely and that Mr. Riles's due process claim is therefore barred

by the PLRA.

The Court disagrees.  The administrative directive specifies that the Level 1 grievance

must be filed "within 30 calendar days of the *occurrence or discovery* of the cause of the

Grievance."  A.D. 9.6(6)(a)(ii)(4) (emphasis added).  Mr. Riles's due process claim alleges that

he was kept on "special needs management" status and in solitary confinement without

meaningful review of the necessity of the classification or the confinement.  ECF No. 21 at 22-

24.  While Mr. Riles may have discovered the indefinite nature of the classification on July 11,

the classification and confinement without adequate review—*i.e.*, the occurrence of the cause of

his grievance—persisted after that date, including after he was transferred to NCI on August 1,

2017.  As a result, Mr. Riles's grievance was not barred simply because it was filed more than 30 days after the July 11 meeting.

> **b.  Mr. Riles Exhausted His Claims Arising from His "Special Needs Management" Classification and Solitary Confinement After August 1, 2017**

The defendants next argue that Mr. Riles did not timely exhaust his claims arising from his conditions of confinement and classification during the period preceding 30 days before he submitted his Level 1 grievance.[4]  According to the defendants, "the 30-day requirement imposed by A.D. 9.6, as well as the fact that Plaintiff was not housed at NCI during the months of May, June, or July 2017, [means that] Plaintiff's August 30, 2017 grievance can only exhaust claims arising from his confinement at NCI on, or after, August 1, 2017."  ECF No. 103 at 12.

Mr. Riles counters that he did timely exhaust as to conditions pre-dating August 1.  He argues that the continuing-violation doctrine, which typically arises in the statute of limitations context, applies in the PLRA exhaustion context as well.  He contends that because the classification and conditions were "continuing violations" that were part of "an ongoing *policy* that resulted in the violation of his rights to due process and to be free from cruel and unusual punishment," he could grieve them at any point while they persisted, and such a grievance would exhaust claims challenging the classification and conditions from the point in time when they first went into effect.  ECF No. 107 at 11.

Mr. Riles cites the Second Circuit's decision in *Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012), as support for his position.  He argues that the Second Circuit in that case "appl[ied] the continuing-violation doctrine in the exhaustion context in a forward-looking manner."  ECF No.

---

[4] The defendants advanced this argument only as to Mr. Riles's Eighth Amendment claim, as they argued that Mr. Riles's due process claim was fully barred due to his failure to file a Level 1 grievance within 30 days of the July 11 meeting.  The Court, having rejected the latter argument, assumes that the defendants would argue that their argument regarding the Eighth Amendment claim applies to the due process claim as well.

107 at 7.  The *Johnson* decision considered whether a prisoner's earlier filing and exhaustion of a grievance regarding a facility's restrictions on congregational prayer was sufficient to exhaust his challenge to those same restrictions after they had been lifted and—two years later—reinstated. The Court concluded that because the issue the prisoner would have grieved after the restrictions were reinstated "was *identical* to the issue he exhausted [two years earlier]," the earlier grievance was "sufficient to exhaust his administrative remedies with respect to the continuing limitations on congregational prayer."  680 F.3d at 239.  The Second Circuit emphasized that this holding was "necessarily limited to cases in which a prior grievance identifies a specific and continuing complaint that ultimately becomes the basis for a lawsuit."  *Id.*

The *Johnson* decision nowhere mentions the continuing violation doctrine and in fact explains that its holding turns on the conclusion that the plaintiff's earlier grievance "provided the prison administration with notice of, and an opportunity to resolve" the problem at issue, as required by the PLRA.  *Id.* at 238.  For this reason, the decision proves unhelpful to Mr. Riles, whose situation is different from—and essentially the opposite of—that of the plaintiff in *Johnson*.  Unlike that plaintiff, Mr. Riles asks this Court to conclude that his later exhaustion of his grievance is sufficient to exhaust his claims going backward, rather than forward, in time. But the Second Circuit's reasoning in *Johnson* does not support such a conclusion.  Mr. Riles's grievance in August 2017 could not have provided prison administrators at NCI (or HCC) with "notice of, and an opportunity to resolve" his complaint regarding his classification and conditions of confinement back in October 2014 when he was initially classified as "special needs management" status, at the time of his earlier transfers between the two prisons, or at any point in between.  It was therefore sufficient only to exhaust his challenge to his classification and conditions from August 1, 2017 onward.

Mr. Riles has not identified any authority from this or other circuits that involves facts comparable to those of this case and reaches the decision he asks the Court to reach here.  Like the *Johnson* decision, the decisions of other circuits that he cites address whether exhaustion of an earlier grievance is sufficient to exhaust claims challenging the issue grieved if that issue continues but the prisoner does not continue to file grievances challenging it.  *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (holding that "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing"); *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (holding that prisoner's first grievance accomplished the PLRA's "purpose by alerting prison officials to the problem and giving them the opportunity to resolve it before being sued," so that he "was not required to initiate another round of the administrative grievance process on the exact same issue each time [it arose]"); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (holding that prisoner was "not required to begin the grievance process anew when the very risk to his safety that he identified during the [earlier] grievance process came to pass [at a later date]"); *Johnson v. Johnson*, 385 F.3d 503, 519-520 (5th Cir. 2004) (holding that prisoner who claimed prison officials failed to protect him from "near-constant sexual assault" over an eighteen-month period was not required to file new grievances after each assault when he had already filed a grievance "alert[ing] prison officials to the fact that [he] was being subjected to repeated assaults and was not receiving any protection from the system").

The Fifth Circuit decision Mr. Riles cites also supports this Court's conclusion.  In that case, the prison's grievance process required that grievances be filed within fifteen days of the complained-of incident.  *Johnson v. Johnson*, 385 F.3d at 515.  While it concluded that one properly exhausted grievance regarding repeated sexual assaults was sufficient to exhaust claims

7

arising from incidents of assault that occurred after the filing of the grievance, the Fifth Circuit also held that the grievance could not exhaust claims arising from assaults that occurred more than fifteen days before it was filed.  *Id.* at 519.  The court wrote:

> We agree with the defendants that [the plaintiff] has not exhausted any claims that arise from events that occurred more than fifteen days before this grievance.  While it is true that the conditions that [the plaintiff] suffered both before and after the grievance were of the same general character, to permit the … grievance to reach back to events that transpired up to six months earlier would effectively negate the state's fifteen-day rule and frustrate the prison system's legitimate interest in investigating complaints while they are still fresh.

*Id.*  While the Fifth Circuit's holding is not binding on this Court, it supports the Court's conclusion that Mr. Riles's grievance could not "reach back" to exhaust his claim as to his classification and conditions during the period preceding 30 days before he filed his grievance.

## V.    Conclusion

For the reasons set forth above, the Court concludes that Mr. Riles has properly exhausted his claims as to his "special needs management" classification and conditions of confinement from August 1, 2017 onward, but not as to his classification and conditions prior to that date.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              November 29, 2021