UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL A. RILES, II,<br>      *Plaintiff*,<br><br>v.<br><br>SCOTT SEMPLE, ROLLIN COOK, DAVE MAIGA, WILLIAM FANEUFF, GREGORIO ROBLES, WILLIAM MULLIGAN, DERRICK MOLDEN, AND ANGEL QUIROS,<br>      *Defendants*. | No. 3:17-cv-2178 (MPS) |

## RULING ON EXHAUSTION OF EIGHTH AMENDMENT CLAIM

### I.    Introduction

At an exhaustion hearing on October 13, 2021, the Court expressed the view that the administrative grievances the plaintiff submitted were—if "deliver[ed] . . . to an appropriate person or in an appropriate manner"—sufficiently specific to provide notice of, and thus to exhaust, both his Fourteenth and Eighth Amendment claims.  *See* ECF No. 102 at 3.[1]  After the hearing, the Court ordered supplemental briefing on the issue of whether Mr. Riles had timely exhausted those claims.  Defendants' supplemental briefs, ECF Nos. 103 and 108, highlighted authority supportive of their view that Mr. Riles's grievances were insufficiently specific to exhaust all components of his Eight Amendment claim, prompting the Court to conclude that its view expressed at the hearing might warrant reconsideration.  The Court directed the parties to file additional briefing on this issue, ECF No. 111,[2] which they have now done, ECF Nos. 113

---

[1] This ruling cites ECF page numbers throughout.
[2] Specifically, on November 29, 2021, the Court ordered the plaintiff to address whether his grievances were sufficient to exhaust "the aspects of his claims challenging his placement on 'administrative segregation' and 'chronic discipline status,' the absence of adequate mental health care, the use of 'full restraints when outside his cell,' the use of harsh fluorescent lighting and chemical sprays that affected his vision, the allegation that it was 'often excessively cold or excessively hot inside the cells,' and the allegation that plumbing issues caused 'excrement to back up into cell toilets.'"  ECF No. 111, quoting Amended Complaint (ECF No. 21).  The Court also stated that its "impression

and 114.  Having reviewed that briefing, the Court now concludes that Mr. Riles's grievances

were sufficiently specific to exhaust some but not all aspects of his Eight Amendment claim.

## II.    Background

The Court assumes familiarity with the facts and procedural history of this case and sets

forth only so much background as is necessary to explain its ruling.

In his initial inmate request form, Mr. Riles wrote as follows:

> On Aug. 1st, 2017, [I] was transferred from H.C.C. back here at Northern for no
> other reason save 4 the fact that [I] found out my status on special needs was not
> acknowledged in H.C.C.'s I/m Handbook nor any management plan & is a
> indefinite status that prevents me from eligibility of R.R.E.C. & parole.  However,
> y'all have been taking R.R.E.C. from me since Oct., 2011 which makes my status
> unconstitutional, because there is no mandatory program criteria, that once
> completed, [I] could then be removed from that class of restrictive status.  But only
> an arbitrary management plan that subjects me to whimsical management that's
> even worse then the subjective management, is [I]'m subject to a variation of
> whimsical management depending on what facility I'm housed at.  [I] am asking to
> be removed from special needs status & removed from permanent solitary
> confinement.

ECF No. 1-1 at 48 (Inmate Request Form dated Aug. 8, 2017).  Mr. Riles included similar

language in each level of grievance form he filed.  *Id.* at 49-51 (Level 1 Grievance dated

Aug. 30, 2017) (complaining of the indefinite nature and arbitrariness of his special needs

classification, objecting to his ineligibility for Risk Reduction Earned Credit ("RREC") and

parole, and concluding: "Please remove me off of special needs status & remove me from

this permanent solitary confinement."); *id.* at 52-53 (Level 2 Appeal dated Oct. 20, 2017)

(again complaining of the indefinite nature and arbitrariness of his special needs status,

objecting to his ineligibility for RREC and parole, and concluding: "[I] am asking to be

---

[was] that the [grievances were] adequate to raise some of the issues described in the complaint, such as lengthy
lockdowns, deprivation of contact with other people, and confinement alone in a cell for the vast majority of each
day and "probably sufficient to exhaust plaintiff's claims that he lacked access to educational and other
programming," but it permitted the parties to address whether the grievances were sufficient to exhaust those claims
as well.  *Id.*

indefinitely removed off of permanent solitary confinement styled under the classification of special needs."); *id.* at 54-55 (again complaining of the indefinite nature and arbitrariness of his special needs status, objecting to his ineligibility for RREC and parole, and concluding: "[I] am now asking Commissioner Semple to indefinitely remove me off of this permanent or indefinite solitary confinement styled as special needs.")  These grievances made no specific mention of his conditions of confinement.

In his amended complaint, ECF No. 21, Mr. Riles challenges various conditions of his confinement at Northern Correctional Institution ("NCI") under the Eighth Amendment.[3]  These conditions include:

- "spend[ing] virtually all of [his] time [23 hours per day] alone in a cell that is roughly the size of a burial plot," with extremely limited contact with the outside world;[4]

- being exposed to "harsh fluorescent lighting" and "frequent use of chemical sprays on his face";[5]

- experiencing "excessively cold or excessively hot" temperatures while in his cell, as well as "frequently broken" plumbing that "caus[ed] excrement to back up into cell toilets";[6]

- being subjected to strip searches when leaving his cell;[7]

- being restrained in handcuffs, leg irons, and a tether chain when outside his cell;[8]

- being denied access to "meaningful education and other programming";[9] and

- receiving inadequate mental health treatment.[10]

---

[3] He also brings a Fourteenth Amendment claim alleging that his classification as special needs status (and related placement in solitary confinement) without meaningful periodic review violated his right of due process.
[4] ECF No. 21 at ¶¶ 6, 24, 28.
[5] *Id.* at ¶ 11.
[6] *Id.* at ¶ 25.
[7] *Id.* at ¶ 26.
[8] *Id.* at ¶¶ 27, 39.
[9] *Id.* at ¶¶ 30, 39.
[10] *Id.* at ¶¶ 60-61.

### III.     Relevant Law

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before seeking relief in federal court. *Porter v. Nussle*, 534 U.S. 516 (2002). To do so, they "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). "[A] grievance suffices," therefore, "if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* (internal quotation marks omitted). "As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.* "Uncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading.  Still, the PLRA's exhaustion requirement does require that prison officials be afforded time and opportunity to address complaints internally."  *Id.* (internal quotation marks and alterations omitted).

### IV.     Discussion

Mr. Riles argues that what this Court referred to in its November 29, 2021 order as "components" or "aspects" of his Eighth Amendment claim are "not *themselves* claims requiring exhaustion" but "factual allegations that support his claim."  ECF No. 113 at 6; *see* note 2, *supra.* He contends that the PLRA does not require exhaustion of such "components."  This argument is at odds with decisions by judges within this district—including the undersigned—concluding that the language included in particular grievances may be sufficient to alert the prison to some, but not all, of a prisoner's claims (or some, but not all, of the allegations upon which a particular claim is based).  For example, in *Lewis v. Cook et al.*, the Court, in determining whether the

plaintiff had exhausted his claims that prison officials were deliberately indifferent to his conditions of confinement, compared the conditions mentioned in his grievances to those described in his complaint.  No. 19-cv1454(JCH), 2021 WL 4477392, at *7 (D. Conn. Sept. 30, 2021).  It ultimately concluded that because the plaintiff had submitted grievances "stating that he was unable to access the law library, have visitors, or make phone calls," but not mentioning other conditions described in his complaint ("eating in a dirty cell; having no power; being limited to three showers a week; stripping before leaving the cell; being confined to the cell for twenty-three hours a day on weekdays and all weekend; being handcuffed and tethered when outside the cell; and never being able to clean his cell"), the plaintiff "did not exhaust his administrative remedies with regards to his claims about the defendant's deliberate indifference to any conditions other than [those described in the grievances]."  *Id.* at *7-8.  *See also Sosa v. Lantz*, No. 9-cv-869(JBA), 2013 WL 4441523, at *5-6 (D. Conn. Aug. 14, 2013) (holding that the plaintiff had exhausted his Eighth Amendment claim complaining of overcrowding as to three of the six conditions alleged as the basis for that claim, and concluding that because the plaintiff's "complaints regarding [the remaining three conditions] ha[d] not been exhausted . . . [the Court] w[ould] not consider those allegations when reviewing [the p]laintiff's Eighth Amendment claim"); *Shehan v. Erfe*, No. 15-cv-1315(MPS), 2017 WL 53691, at *8 (D. Conn. Jan. 4, 2017) (holding that the plaintiff had exhausted only those claims "that he actually asserted in [his] grievance").  These decisions reflect the Second Circuit's teaching in *Johnson* that inmates' grievances "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."  380 F.3d at 697.  In *Lewis*, for example, prison officials would not have known of any need to address a "dirty cell" or the loss of power from a grievance alleging deliberate indifference about access to a law

library or the inability to make phone calls.  Based on similar reasoning, I conclude that a grievance that references "permanent solitary confinement" and "special needs status"—but no other conditions of confinement—is not sufficient to exhaust claims challenging any and all conditions of confinement while in solitary confinement or on special needs status.

The question, then, is which conditions the grievances adequately exhausted.  The defendants argue that Mr. Riles's mention of "solitary confinement" was too "vague and broad" to have put the defendants on notice of any of the conditions he now challenges via his Eighth Amendment claim.  ECF No. 114 at 2.  They contend that if prison officials had removed Mr. Riles from special needs status (but kept him in solitary), "this would ostensibly [have] grant[ed] his requested relief, and there would be no notice that this action would be insufficient to remedy the complaints raised in this grievance."  *Id.* at 3-4.  This argument is unpersuasive.  Mr. Riles's grievances object explicitly to his placement on special needs status *and* to his placement in solitary confinement.  His insinuation in the grievances that the status and conditions of confinement are connected does not mean that his removal from the status (with no accompanying change in his conditions of confinement) would also remedy his complaint about being kept in "permanent solitary confinement."  And the term "solitary confinement" is not so vague as to require prison officials to engage in a "guessing game" regarding which conditions Mr. Riles was objecting to.  *See* ECF No. 114 at 3.

I conclude that the references to "permanent solitary confinement" were adequate to put prison officials on notice that Mr. Riles was challenging his confinement alone in a small cell for twenty-three hours per day, and thus to exhaust his Eighth Amendment claim with respect to that condition.  The grievances were also sufficient to exhaust Mr. Riles's claim with respect to his allegations that he had limited contact with the outside word and was denied access to

recreational and other programming, as confinement alone in a cell for the vast majority of each day necessarily would limit access to either.  The reasoning of a decision outside the Second Circuit that Mr. Riles cites supports this conclusion.  *See Porter v. Penn. Dept' of Corr.,* No. CV 17-763, 2018 WL 5846747, at *11 (W.D. Pa. Nov. 8, 2018), *aff'd in part, rev'd in part and remanded (on grounds unrelated to exhaustion)*, 974 F.3d 432 (3d Cir. 2020) (rejecting argument that prisoner who filed grievance objecting to "illegally being subjected to solitary confinement on death row" was required to reference specifically the Eighth Amendment or "detail the allegedly cruel conditions of confinement" experienced in death row solitary confinement in order to exhaust Eighth Amendment claim).  Also, because Mr. Riles's grievances asked that he be "removed from special needs status" and because the complaint specifically alleged that Riles's "Special Needs Custody Management Plan" required that he be placed in "full restraints" when moving outside his cell, ECF No. 21 at ¶ 39, I find that the complaint's allegation that he was required to be in handcuffs and leg irons whenever outside of his cell has been exhausted as well.  While the grievances do not mention restraints, they do repeatedly complain about Riles's "special needs status," which is a restrictive status described in DOC directives that, to a DOC employee, reasonably encompasses the particular "Special Needs Custody Management Plan" of the inmate involved.  *See* DOC Admin. Directive 9.4 § 13E ("An individualized facility management plan for each inmate on Special needs Management Status shall be developed collaboratively by the facility custody and mental health staff . . . .").  In other words, a DOC employee faced with a grievance about an inmate's "special needs status" would be on notice of the need to check that inmate's particular "Special Needs Custody Management Plan" to understand specifically what the inmate was complaining about.  Here, according to the complaint, the plan for Riles included a provision that expressly required full restraints outside

the cell.  ECF No. 21 at ¶ 39.  So the defendants were on notice of that particular allegation in Riles's complaint.

Nevertheless, to the extent Mr. Riles argues that his grievances were sufficient to exhaust his claim with respect to other conditions described in his complaint (the temperature, lighting, or plumbing in his cell; the prison's use of strip searches and chemical sprays; or the inadequacy of the mental health treatment provided to him) because those were part and parcel of solitary confinement or special needs status at NCI—rather than additional, unrelated conditions of Mr. Riles's confinement—I disagree.  The term "solitary confinement" does not call to mind plumbing issues, use of chemical sprays, strip searches, or any other of these conditions.  And Mr. Riles neither alleges in his complaint nor identifies any evidence indicating that these conditions were necessary conditions of (or unique to) his placement in solitary and on special needs status.  *See, e.g.,* ECF No. 21 at ¶ 43 (stating that one of Mr. Riles's special needs status "Management Plans" did not provide for "meaningful mental health care," but not that he was expressly barred from such care by virtue of that status).  Thus, the grievances could not have alerted prison officials to these alleged wrongs, nor did they "provide enough information about" any of these alleged conditions "to allow prison officials to take appropriate measures" to remedy them.  *See Johnson*, 380 F.3d at 697.  Mr. Riles's argument that the defendants "all of whom were officials stationed at NCI at least part-time, were []aware of the conditions there for special needs inmates"—presumably, the range of conditions described in the complaint—is unavailing.  ECF No. 113 at 5.  Whether a prisoner has exhausted his claims as required by the PLRA hinges not on whether prison officials happen to be aware of conditions described in his lawsuit, but on whether the prisoner has alerted officials to his complaints regarding those conditions via a properly filed administrative grievance so that they are afforded an opportunity

to address those complaints before a lawsuit is filed.  Accordingly, I conclude that the grievances were insufficient to exhaust Mr. Riles's Eighth Amendment claim with respect to the conditions regarding lighting, chemical sprays, cell temperature, plumbing, strip searches, and inadequate mental health treatment.[11]

## V.     Conclusion

This Court has already ruled that Mr. Riles has exhausted his claims as to his placement on "special needs management" status and his conditions of confinement from August 1, 2017 onward.  *See* ECF No. 110.  The Court now holds, for the reasons set forth above, that Mr. Riles has exhausted those components of his Eighth Amendment claim challenging his confinement alone in a small cell for most of each day, his lack of access to recreational and other programming, his lack of contact with the outside world, and the requirement that he be in "full restraints" outside his cell; but that he has not exhausted those components based on the temperature, lighting, or plumbing in his cell; the prison's use of strip searches and chemical sprays; or the alleged inadequacy of the mental health treatment provided to him.

Jury selection is scheduled for October 19, 2022.  The parties' joint trial memorandum is due on September 19, 2022.  By January 24, 2022, the parties shall submit a revised case management plan with proposed deadlines for the steps remaining to ready this case for trial.

---

[11] Mr. Riles has identified no binding authority indicating that this conclusion is incorrect, nor does the non-binding authority he cites from within the Second Circuit undermine this conclusion.  In none of those decisions did the district court hold that a challenge to a particular classification or condition of confinement could exhaust claims based on separate conditions of confinement, as I would have to conclude in order to hold that Mr. Riles's grievances were sufficient to exhaust his claim as to all conditions described in his amended complaint.  *See Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (rejecting argument that "total issue and party exhaustion" were required to satisfy PLRA exhaustion requirement); *Branch v. Brown*, No. 1-cv-8295(DC), 2003 WL 21730709, at *12 (S.D.N.Y. July 25, 2003) (declining to dismiss *entire* action on exhaustion grounds simply because "some of the alleged conduct may technically [have] fall[en] outside of the . . . grievance"); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 277-78 (D. Conn. 2001) (holding that where the plaintiff had filed a second amended complaint after enactment of the PLRA but had filed prior complaints pre-PLRA, the plaintiff was not required to exhaust the claims added in the second amended complaint).

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
               January 13, 2022